UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNY FERGUSON, ROGER MOELLMAN, AND STEVEN GIFFORD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>RANDY'S TRUCKING, INC. AND RANDY GRIFFITH, and<br><br>Defendants. | Case No.: 1:15-cv-00697 - JLT<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION NAD CERTIFICATION AS A COLLECTIVE ACTION UNDER THE FLSA<br><br>(Doc. 25) |

Plaintiffs Ronny Ferguson, Roger Moellman, and Steven Gifford were formerly employed by Randy's Trucking, Inc.  Plaintiffs assert Randy's Trucking Inc., and Randy Griffith, the President of Randy's Trucking, are liable for wage and hour law violations and unfair business practices.  Accordingly, Roger Moellman, and Steven Gifford[1] seek certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure to challenge the pay practices of Randy's Trucking Inc.[2]  (Doc. 25)  Defendant opposes certification of a class, arguing Plaintiffs fail to demonstrate the requirements of Rule 23 are satisfied.  (Doc. 30)

The Court has read and considered the pleadings and supporting documents, and heard oral arguments by counsel on March 8, 2016.  For the reasons set forth below, Plaintiffs' motion for class

---

[1] Ronny Ferguson does not seek to be a class representative, and apparently does not join in the motion.
[2] At the hearing, counsel clarified that Plaintiffs were not seeking class certification against Randy Griffith.  Thus, here, "Defendant" is intended to refer only to Randy's Trucking Inc., while "the defendants" refers to all defendants.

1

certification is **DENIED.**

## I.     Background

Randy's Trucking Inc., ("RTI") is a company that "offers vacuum truck services, winch truck, hauling, crane services, as well as [i]ndustrial services, tank sales and rentals." (Doc. 25 at 6) Plaintiffs assert that according to the company website, "RTI has extensive experience in servicing drilling, production and work over rigs as well as all forms of lease work, transferring fluids from flow back and frac tanks, as well as hauling oil to production facilities." (Doc. 22 at 2-3, ¶ 11)  Plaintiffs allege RTI "also rents tanks to drilling companies and sells cement." (*Id.* at 3, ¶ 12)

Plaintiffs contend they were formerly employed as drivers for Defendant.[3] (Doc. 22 at 2) According to Plaintiffs, they worked "onsite at various drilling locations assisting with drilling and extraction operations." (*Id.*, ¶ 14)  Plaintiffs allege they spent "[a] significant portion" of their work "doing tasks other than driving a truck." (*Id.*, ¶ 15) Rather, Plaintiffs contend "almost all their time was spent at drilling locations and not driving a truck." (*Id.*)  Plaintiffs assert they "routinely worked hours in excess of 12 hours in a day," but "were only paid overtime after 40 hours in a week and were never paid double time." (*Id.*, ¶¶ 19-20)

Ronny Ferguson and Roger Moellman initiated this action by filing a complaint on May 6, 2015. (Doc. 1)  Steven Gifford joined the action when Plaintiffs file the first amended complaint on October 6, 2015.  Plaintiffs contend the defendants did not properly pay overtime wages and failed to pay wages due upon termination. (*See generally* Doc. 22)  Accordingly, Plaintiffs assert the defendants are liable for failure to calculate overtime pursuant to Industrial Welfare Commission Order No. 16-2001, California Code of Regulations, Title 8, § 11160; failure to pay wages due under Cal. Labor Code § 203; failure to pay overtime in violation of 29 U.S.C. §§ 207 and 216; and unfair business practices in violation of Cal. Bus. & Prof. Code §17200. (*Id.* at 8-12)  The defendants filed their answer to the First Amended Complaint on October 20, 2015. (Doc. 24)

## II.     Request for Judicial Notice

In connection with the opposition, Defendant requests the Court take judicial notice of:

---

[3] Specifically, Ronny Ferguson "was employed by Defendants from December 1, 2009 through November 13, 2014;" Roger Moellman "was employed by Defendants from May 1, 2014 through November 30, 2014;" and Steven Gifford "was employed by Defendants from June 2007 through January, 2015." (Doc. 22 at 2)

1. The Chapter 7 bankruptcy petition filed by Plaintiff Ronny Ferguson in *In re Ronny Keith Ferguson*, Case No. 15-1 0663-A-7, filed in the United States Bankruptcy Court for the Eastern District of California on February 25, 2015;

2. The Discharge of Debtor issued by the United States Bankruptcy Court in *In re Ronny Keith Ferguson*, Case No. 15-10663-A-7 on June 29, 2015;

3. The judgment entered in *California Asparagus Growers Assoc. v. Industrial Welfare Comm'n of the State of California*, Case No. 129734 filed in the Superior Court of California, County of San Joaquin, on or around July 21, 1977;

4. The decision issued by the Labor Commission in *Salomon Ruiz Estamislao v. Glad-A-Way Gardens. Inc.,* Case No. 13-49409, on August 29, 2014;

5. The California Department of Labor Standards Enforcement ("DLSE") Opinion Letter sent from Assistant Labor Commissioner Don Craib dated August 4, 1981;

6. The DLSE Opinion Letter sent from Chief Deputy Labor Commissioner Albert Reyff dated November 21, 1986; and

7. The DLSE Opinion Letter sent from State Labor Commissioner Lloyd Aubry, Jr., dated May 14, 1987.

(Doc. 34 at 2)

The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The records of court proceedings cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.,* 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.,* 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Rodic v. Thistledown Racing Club, Inc*., 615 F.2d 736, 738 (6th. Cir. 1980). However, Mr. Ferguson's bankruptcy proceedings have no relevance given the fact that he is not a party to this motion. (Doc. 25 at 1, 6) Thus, the request for the Court to take judicial notice of Mr. Ferguson's bankruptcy proceedings is **DENIED**.

The official records of the State of California, as contained in the Department of Industrial Relations' official website, are a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of facts on a website of a government agency. *See O'Toole v. Northrop Grumman Corp*., 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of

3

factual information found on the world wide web"); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on the website of a government agency); *United States ex rel. Dingle v. BioPort Corp.*, 270 F.Supp.2d 968, 972 (W.D. Mis. 2003) ("government documents are generally considered not to be subject to reasonable dispute . . . This includes public records and government documents available from reliable sources on the Internet"). As such, the DLSE Opinion Letters, which are published on the website of the Department of Industrial Relations, are subject to judicial notice.

Because the accuracy of the court records and DLSE documents cannot reasonably be questioned, the request for judicial notice is **GRANTED**.

### III. Legal Standards for Class Certification

#### A. Rule 23(a) Prerequisites

Class certification is governed by the Federal Rules of Civil Procedure, which provide: "One or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). A class action is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In general, these prerequisites are referred to as numerosity, commonality, typicality, and adequacy of representation, and "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)).

#### B. Rule 23(b) Certification

When a proposed class satisfies the prerequisites of Rule 23(a), the Court must determine whether the class is maintainable under Rule 23(b). *Leyva v. Medline Indus.*, 716 F.3d 510, 512 (9th Cir. 2013); *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). Under Rule 23(b)(1), a class is maintainable if there is a risk of inconsistent or varying adjudications from "prosecuting separate actions by or against individual class members." *Id*. In addition, a class may be certified if "adjudications with respect to individual class members . . . would be dispositive of the

interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

A class is maintainable under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate responding the class as a whole." *Id*. The Supreme Court explained, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. . . [I]t does not authorize class certification when each member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores*, *Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011).

Class certification under Rule 23(b)(3) allows for class certification in cases "in which class-action treatment is not clearly called for as it is in Rule 23(b)(1) and (b)(2) situations." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Thus, a class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### C.     Burden of Proof and Evidentiary Submissions

Parties seeking class certification bear the burden of demonstrating by a preponderance of the evidence that Rule 23 is satisfied. *Dukes*, 131 S. Ct. at 2551; *Doninger v. Pacific Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 319 (3d Cir. 2008), as amended (Jan. 16, 2009). In *Dukes*, the Court held, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." (Emphasis in the original)  Notably, in 2003, Rule 23 was amended to eliminate the practice of "conditional class certification." Rather, the Advisory Notes to this amendment indicates, "A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 319, the Court held, "While these amendments do not alter the substantive standards for class certification, they guide the trial court in its proper task-to consider carefully all relevant evidence and

make a definitive determination that the requirements of Rule 23 have been met before certifying a class." It is not enough for the court to *assume* the Rule 23 factors have been shown or can be shown; they must be shown.

The Court must conduct a "rigorous analysis," which may require the Court "to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 160-61). "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir.2008)." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 320.

## IV.    Discussion and Analysis

Plaintiffs seek certification of a class defined as: "All drivers of Randy's Trucking employed at any time after May 6, 2011." (Doc. 25 at 1) In addition, Plaintiffs request certification of a sub-class defined as: "All drivers Randy's Trucking whose employment has ended at least once since May 6, 2012." (*Id.* at 2) Plaintiffs contend the prerequisites of Rule 23(a) are satisfied, and certification of the proposed classes is appropriate under both Rule 23(b)(1) and (b)(3). (*Id.* at 9)

### A.    Article III Standing

Prior to evaluating Plaintiffs' proposed classes under Rule 23, the Court must determine whether Plaintiffs have standing to assert their claims. As the Ninth Circuit explained, standing "is a jurisdictional element that must be satisfied prior to class certification. *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985). Consequently, the Court should address the issue of standing prior to certifying a class. *See Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir.2004).

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The Ninth Circuit explained, "[T]he Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (quoting *Ry. Mail Assoc. v. Corsi*, 326 U.S.

6

1 | 88, 93 (1945)).  To satisfy the "case or controversy" requirement, a plaintiff must establish standing
2 | under Article III to bring suit.  *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir.
3 | 2010); *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 938 (2007) ("standing is an
4 | essential and unchanging part of the case-or-controversy requirement of Article III").

5 | To establish standing—and thus that there is an actual case or controversy—a plaintiff "must
6 | demonstrate (1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by
7 | a decision in the plaintiff's favor." *Human Life,* 624 F.3d 1000 (citing *Lujan v. Defenders of Wildlife*,
8 | 504 U.S. 555, 560 (1992)).  In a proposed class action, "if none of the named plaintiffs purporting to
9 | represent a class establishes the requisite of a case or controversy with the defendants, none may seek
10 | relief on behalf of himself or any other member of the class." *Lierboe v. State Farm Mut. Auto. Ins.
11 | Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

12 | Furthermore, a class must be defined to include only individuals with Article III standing.  *See
13 | Dukes*,131 S.Ct. at 2552 (acknowledging "the necessity" to exclude putative class members who
14 | "lack[ed] standing to seek injunctive or declaratory relief" from a proposed class).  As such, the Ninth
15 | Circuit has determined that "no class may be certified that contains members lacking Article III
16 | standing." *Mazza v. Am. Honda Motor*, 666 F.3d 581, 594 (9th Cir. 2012) (quoting *Denney v. Deutsche
17 | Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).  Similarly, other circuits have determined class
18 | certification was not appropriate when it was not clear that class members had Article III standing for
19 | the claims presented.  *See, e.g., Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming the
20 | denial of class certification where it was not clear "the proposed class members have all suffered a
21 | constitutional or statutory violation warranting some relief"); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d
22 | 1023, 1034 (8th Cir. 2010) ("a class cannot be certified if it contains members who lack standing").
23 | Consequently, the Court must determine whether the class proposed by Plaintiff contains only
24 | individuals who have standing under Article III.

25 | Defendant does not dispute that Plaintiffs have standing under Article III, but assert that the
26 | proposed class of drivers is overbroad because it is not "limited to members who possess standing."
27 | (Doc. 30 at 7)  Defendant argues the class definition includes individuals who "have not suffered any
28 | demonstrable injury." (*Id.* at 21)  As Defendant asserts:

> The issues raised in this action are: 1) whether the "regular rate" for purposes of overtime was miscalculated because it did not factor "safety bonuses" in the calculation, 2) whether overtime for "Shop" hours was improperly calculated, and 3) whether Plaintiffs are owed double time in certain overtime scenarios.

(*Id.* at 22) Accordingly, drivers whom Defendant did not properly pay overtime have suffered an injury. Drivers whom Defendant properly paid overtime have not. *See Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972) ("palpable economic injuries have long been recognized as sufficient to lay the basis for standing"); *see also Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("[e]conomic injury is clearly a sufficient basis for standing").

Significantly, the Court may cure the defects of a proposed class definition where the class is overbroad. *See, e.g., Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482-83 (N.D. Cal. 2011); *see also Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions"); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("district courts are permitted to limit or modify class definitions to provide the necessary precision"). Though Defendant contends that "[i]t would be trivial to redraft the class definition to encompass only those Drivers which actually possess standing" (Doc. 30 at 22), the Court exercises its discretion here to amend the proposed class definition to ensure all members have standing. Accordingly, for purposes of this motion, the class definition is amended to include: All drivers employed after May 6, 2011 who were not properly paid for overtime.

**B.     Numerosity**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *EEOC*, 446 U.S. at 330. Although there is no specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members"); *see also Welling v. Alexy (In re Cirrus Logic Sec.),* 155 F.R.D. 654, 656 (N.D. Cal. 1994) (noting that courts have certified classes with 50-60 members).

Plaintiffs claim the numerosity requirement is satisfied "because there are 80 putative class members." (Doc. 25 at 10, emphasis omitted)  Specifically, Mr. Gifford reports: "During the period of May 6, 2011 to January 2015 when I left employment, I was able to observe other drivers.  There were between 50-80 other individuals working as Drivers during this period."[4] (Doc. 15-1 at 2, Gifford Decl. ¶ 3)  Importantly, however, Plaintiffs fail to offer any information regarding the number of truck drivers who were required to work overtime, or whose overtime pay was not properly calculated by Defendant.

For example, Plaintiffs contend overtime was improperly calculated for several reasons including: (1) the failure to include safety bonuses when determining the employee's overtime hourly rate; (2) the failure to pay double time to drivers working more than a 12-hour day; and (3) the failure to pay overtime on "shop time" when the total hours worked exceeded 40[5] in a week.  (Doc. 25 at 7-8)  For these various scenarios, Plaintiffs offer no evidence whether each of the 50-80 drivers experienced at least one of these practices.  Notably, the declarations of Plaintiffs do not address whether they worked in the shop or that they exceeded 12-hours worked in a day.[6]  Likewise, while Defendant's policy indicates that each ye company would recognize employees who demonstrate "exceptional work and/or safety consciousness [that] represents the standards of efficiency and safety [the company is] striving for . . ." (Doc. 25-9 at 2)  The policy does not dictate that safety bonuses would be given if no employee did so.  Likewise, there is no assurance that every employee would receive a safety bonus during his tenure. Indeed, there is evidence that Mr. Gifford received a safety bonus one time but no evidence whether Mr. Moellman ever did. Thus, the Court cannot determine whether the class is sufficiently numerous.

Similarly, Plaintiffs fail to provide any information regarding the number of drivers whose employment was terminated "at least once since May 6, 2012."  The Court is unable to speculate as to

---

[4] Although Defendant asserts Mr. Gifford "fails to establish the foundation for his testimony" that there were 50-80 drivers (Doc. 30 at 23), Mr. Gifford clearly states his testimony is based upon his personal observation while he was employed by Randy's Trucking.  Accordingly, Defendant's objection is **OVERRULED**.

[5] Plaintiffs contend that Defendant would pay overtime when the employee's truck hours exceeded 40 hours but would not pay overtime when the employee's shop time caused the work week to exceed 40 hours. (Doc. 25 at 8)

[6] Plaintiffs provide time card evidence but provide no interpretation of them. In light of Defendant's evidence—that drivers were allowed to bill hours not actually worked—due to "flat" rate jobs or cancelled jobs (where they are allowed to bill for hours not worked)—exactly what to make of these time cards.

the number of drivers who have standing or would be members of either class. *See Dukes,* 131 S. Ct. at 2551 (plaintiffs "must be prepared to prove that there are in fact sufficiently numerous parties"); *see also Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 681 (S.D. Cal. 1999) ("Plaintiffs must show some evidence of or reasonably estimate the number of class members"); *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013) ("where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone"). Consequently, Plaintiffs have failed to demonstrate the class and its sub-class satisfy the numerosity requirement of Rule 23(a).

### C. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "However, it is insufficient to merely allege any common question." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Commonality must be shown by a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

Plaintiffs contend the commonality requirement is satisfied because the there is a common question of law to be resolved: whether drivers should be paid under Wage Order Number 9 or Number 16. (Doc. 25 at 10) Plaintiffs note that Wage Order Number 9 applies to the "Transportation Industry," which includes:

> any industry, business, or establishment operated for the purpose of conveying persons or property from one place to another whether by rail, highway, air, or water, and all operations and services in connection therewith; and also includes storing or warehousing of goods or property, and the repairing, parking, rental, maintenance, or cleaning of vehicles.

(*Id.*, quoting Cal. Code of Regulations, Title 8, § 13090) On the other hand, Wage Order Number 16 covers:

> all job classifications associated with the exploration or extraction of oil, gas, or water resources work, including but not limited to the installation, establishment, reworking, maintenance or repair of wells and pumps by boring, drilling, excavating, casting, cementing and cleaning for the extraction or conveyance of fluids such as water, steam, gases, or petroleum.

(*Id.* at 11, quoting Cal. Code of Regulations, Title 8, § 13160)  In addition, Wage Order Number 16 includes a supremacy clause, indicating it "supersedes any industry or occupational order for those employees employed in occupations covered by this order." (*Id.*)  Plaintiffs contend "they are not covered by Wage Order #9 because they do not transport anything "by rail, highway, air, or water," and instead "operate vehicles at well sites that are off-road." (*Id.* at 11)

Defendant argues that "the issue of whether Wage Order #16 applies to Drivers" fails to satisfy the commonality requirement because "it is not central to the validity of Plaintiffs' claims" and "is not capable of resolution on a class-wide basis. (Doc. 30 at 25, 26) (emphasis omitted)  Defendant explains that its drivers have a wide variety of duties, and "the wage order applicability issue must be resolved on an individualized basis for each Driver, by analyzing each Driver's day-to-day job duties." (*Id.* at 26)  Specifically, Defendant argues:

> [N]one of the tasks performed by Drivers for oil industry clients constitutes "drilling occupation" work. To the extent that Plaintiffs argue otherwise, Defendants contend that individual inquiry is necessary to classify which specific jobs can fairly be characterized as "drilling occupation" work. A simple delivery of water from RTI's yard to a storage tank on a client's yard cannot fairly be characterized as "drilling occupation" work, particularly where the delivered water is used for purposes incidental to oil drilling, such as cleaning tanks. To the extent that Plaintiffs can successfully argue that other jobs exist which can be characterized as "drilling occupation" work, Plaintiffs would bear the burden of identifying these jobs, presenting the facts which show that the jobs involve "drilling occupation" work, and segregating the days Drivers performed these hypothetical jobs from the days Drivers performed traditional, non-"drilling occupation" delivery jobs. This process necessarily involves intensive, individualized, day-to-day inquiry.

(*Id.* at 27)

Notably, Kyle Griffith, the operations manager for RTI, claims its trucks are used to "transport[] materials such as water, mud, rock, gravel, sand, dirt, road base, heavy equipment, storage containers, mobile officers, and single wide trailer houses for clients." (Doc. 31 at 2, Griffith Decl. ¶ 4)  He reports that RTI drivers use three different trucks: "vacuum trucks, winch trucks, and crane trucks." (Doc. 31 at 3, Griffith Decl. ¶ 13)  According to Mr. Griffith, "[t]he time spent in each type of truck varies from Driver to Driver," and "some Drivers predominantly use vacuum trucks, while others predominantly use winch trucks." (*Id.*, ¶¶ 14-15)  Mr. Griffith explained "[t]he majority of work performed by Drivers is performed on a will-call basis" and, as a result," "even among Drivers that drive the same type of truck, the job duties and duration of each job duty will vary from day-to-day." (*Id.*, ¶¶ 17-18)

11

However, the job duties could include hauling services for the oil industry, environmental companies, utility companies, farms, airports, and residential developers. (*Id.* at 2, ¶ 6)

Plaintiffs reported they "operated a Vacuum Truck and a Winch Truck." (Doc. 25-1 at 1, Gifford Decl. ¶ 2; Doc. 25-2 at 1, Moellman Decl. ¶ 2) Mr. Gifford reports: "As a driver, I would pump various fluids, such as mud and salt water, to drilling rigs, production rigs, and work over rigs. I would also move drilling rigs to new locations and setup the rig to drill for new oil." (Doc. 25 at 2, Gifford Decl. ¶ 4) He asserts that "[t]he majority of [his] time was spent operating a truck and its various pumps or other equipment at a particular site and not spent hauling cargo from one location to another." (*Id.*, ¶ 5) Similarly, Mr. Moellman reported a "majority of [his] time" was not spent hauling cargo, but rather "at a particular site." (Doc. 25-2 at 2, Moellman Decl. ¶ 5)

Significantly, Plaintiffs fail to provide any evidence regarding the duties performed by other RTI employees who operated the vacuum, winch, and crane trucks. The Court cannot presume that the job tasks performed by Plaintiffs were the same tasks performed by other drivers—who may have been providing services for other RTI clients that did not involve remaining at one location or providing services for the oil industry.

On the other hand, even if Plaintiffs are successful in demonstrating Wage Order 16 applies, they have not demonstrated whether this determination would make a difference to the entire class. For example, if few work more than a 12-hour day, resolution of this question would not be common to all. As noted above, Plaintiffs have provided no evidence as to how many of the drivers actually work more than 12 hours in a day as opposed to noting more than 12 hours on a time card for purposes of obtaining benefits provided by payment policies, e.g. flat rate trucking jobs or cancelled jobs.

Given the lack of evidence regarding the commonality of job duties performed by RTI drivers or information about whether generally, drivers actually work more than 12 hours in a day, Plaintiffs have failed to demonstrate the question of which wage order applies is capable of class-wide resolution. Consequently, this factor weighs against class certification. *See Dukes*, 131 S. Ct. at 2551 (explaining commonality is not satisfied by the raising of a common question, but the ability "to generate common *answers*", and "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers") (emphasis in original).

**D.      Typicality**

The typicality requirement demands the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to be identical, but rather "reasonably co-extensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is satisfied when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Plaintiffs argue the typicality requirement is satisfied because "the Drivers were all subject to the same pay provisions for overtime and double time pay." (Doc. 25 at 12)  Plaintiffs contend: "Each of the representatives recorded their time on the time card, as did all the Drivers. These time cards show days in which more than 12 hours were work. [Citation]  In addition, they received bonuses that were not included in computing the regular rate of pay." (*Id.*, internal citation omitted)

On the other hand, Defendant contends that "typicality has not been established" because Plaintiffs fail to present evidence that all RTI drivers performed oil drilling work. (Doc. 30 at 35)  In addition, Defendant argues the typicality requirement is not satisfied because "all three named Plaintiffs will be preoccupied with an unclean hands defense unique to their claims ... [and] attacks on their credibility." (*Id.*)  As Defendant argues, courts have determined that,

> Typicality may be found lacking "if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.' " *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990)); see also *J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir.1980) ("[E]ven an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation").

*Pryor v. Aerotek Scientific*, LLC, 278 F.R.D. 516, 527 (C.D. Cal. 2011).  However, a mere unique defense is not sufficient to find the element not satisfied.

> [T]he Ninth Circuit has made clear, the key question is whether a class representative is subject to a unique defense, such that she will be "preoccupied" and whether the defense

13

> will become the focus of the litigation to the detriment of the class. *Hanon*, 976 F.2d at 508. To be typical, a class member need not prove that she is immune from any possible defense, or that her claim will fail only if every other class member's claim also fails. Instead, she must establish that she is not subject to a defense that is not "typical of the defenses which may be raised against other members of the proposed class." *Id.*; see also *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984–85 (9th Cir.2011).

*Id.* at 528.

Defendant contends Plaintiffs have engaged in "dishonest timekeeping practices," by "fraudulent inflating the number of hours worked on their Daily Time Cards." (Doc. 30 at 38, 39, emphasis omitted) Accordingly, Defendant argues that "[t]he affirmative defense of unclean hands applies uniquely to the claims of Ferguson, Moellman, and Gifford. (*Id.* at 38) However, Defendant fails to demonstrate that the unique defenses would preoccupy them, or that the hours Plaintiffs worked would become the focus of the litigation, rather than the duties performed.

Regardless, Plaintiffs fail to present evidence that their claims are co-extensive with those of the putative class members. Although all RTI drivers have been subject to the same policies and procedures, Plaintiffs have not presented evidence that the job duties they performed were similar to those of other drivers.[7] *See Washington v. Joe's Crab Shack,* 271 F.R.D. 629 (N.D. Cal. 2010). Consequently, the Court cannot find Plaintiffs "have the same or similar injury" as the putative class, and this factor weighs against class certification.

### E. Adequacy of Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied when the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego*

---

[7] Moreover, as discussed above, Plaintiffs' original class definition may include drivers who were not required to work overtime, or who do not have standing. Where some of the class members have not suffered any injury, though the class representative has, the typicality requirement of Rule 23(a) is not satisfied. *See, e.g., O'Neill v. Gourmet Sys. of Minnesota, Inc.,* 219 F.R.D. 445, 453 (W.D. Wis. 2002) (finding no typicality when the class representative had standing but many of the proposed class members suffered no injury); *In re New Motor Vehicles Canadian Export, No. MDL 1532*, 2006 WL 623591, at *3 (D. Me. Mar. 10, 2006) *rev'd on other grounds*, 522 F.3d 6, 27-28 (1st Cir. 2008) (assessing standing under typicality).

14

*Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Because Plaintiffs have not satisfied the prerequisites of commonality and typicality under Rule 23(a), Plaintiffs would not be proper representatives of the class. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1027 (9th Cir. 2011) (affirming a finding that the named plaintiffs "are not proper class representatives" because their claims were "not typical of the class members"). Therefore, the Court finds Plaintiffs fail to carry the burden to demonstrate the requirement is satisfied.

## V. **FLSA Collective Action**

The FLSA requires employees in interstate commerce to be paid overtime at the rate of one and one-half times their regular hourly rate for hours worked over forty in a workweek. 29 U.S.C. § 207(a)(1). An aggrieved employee may bring a collective action on behalf of himself and others "similarly situated" based on an employer's failure to adequately pay overtime wages. 29 U.S.C. § 216(b). To participate in the collective action, employees must opt-in to the litigation. *Id*. This means, of course, employees must be given notice of the action to evaluate whether to do so. "Determining whether a collective action is appropriate is within the discretion of the district court." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).

For an action to proceed as a collective action, the Court must first determine whether the named plaintiffs are similarly situated to the other aggrieved employees. *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D.Cal.2004). Generally, courts follow one of two approaches to make this determination depending upon the posture of the case. *Wynn v. National Broadcasting Co*., 234 F.Supp.2d 1067 (C.D.Cal.2002). In cases falling under the first tier, or "notice stage", generally, little discovery has occurred so the question is determined primarily upon the pleadings and the declarations of the plaintiffs. *Bishop v. Petro-Chem. Transp., LLC*, 582 F. Supp. 2d 1290, 1294 (E.D. Cal. 2008). Under the second tier approach, discovery has largely completed and the parties are better situated to provide concrete evidence shedding light on the determination. *Id*. at 1294-1295.

In *Bishop,* the "preliminary scheduling order limited the initial merits-based discovery to [the plaintiff], and as to the issue of class certification." *Id.*, 582 F. Supp. 2d at 1295. The Court noted discovery was "not complete, and the case [was] not ready for trial." *Id.* Thus, the Court concluded the action was "more at the notice stage due to the limitation in discovery and pretrial preparation." *Id.*

15

Similarly, here, discovery is not complete because the deadline for non-expert discovery is May 6, 2016. (*See* Doc. 16 at 1). Accordingly, the Court finds the action remains at the notice stage for purposes of determining whether Plaintiffs may proceed with a collective action on their FLSA claim.

At the notice stage, a plaintiff's burden is slight to show the putative class is "similarly situated," but "does require some evidentiary support." *Bishop*, 582 F.Supp.2d at 1290. Therefore, "unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006) (citing *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003); *Bernard v. Household Intern., Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002)). Instead, a named plaintiff must identify some evidence to demonstrate that he or she and other potential plaintiffs were victims of a common policy or plan that violated the law. *Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 993 (C.D. Cal. 2008).

For example, in *Bishop*, the plaintiff asserted he and other truck drivers "regularly worked in excess of forty hours per week without overtime compensation," and sought to proceed with a collective action. *Id.* 582 F.Supp.3d at 1295. Court determined the plaintiff failed to meet his burden where the plaintiff testified he was not paid proper overtime, but filed a declaration that was "entirely deficient in the similarities of the truck drivers." *Id.* at 1296. The Court explained:

> First, the declaration does not include any evidence which indicates that the other drivers who haul in California were improperly paid for their work. Leo Bishop states that he was not paid overtime, but does not offer any evidence of other workers who were not paid overtime. He does not present evidence of a company wide policy to deny overtime compensation to those who are entitled to such compensation. Further, Plaintiff Leo Bishop's declaration does not state any facts as to other potential class members similarly situated as him. He does not present any evidence of other truck drivers purported goods or the routes that the truck drivers drove. While the proposed class is "truck drivers," all drivers did not drive similar products or similar routes for similar customers. The evidence before the Court is that plaintiff was dedicated driver to Chevron, a Petro-Chemical customer, at the Montebello facility. There is no evidence before the Court that any other driver is similarly dedicated. Thus, the declaration does not support the similarity of the products or routes performed by the similar truck drivers.

*Id.* In addition, the plaintiff identified deposition testimony that failed "to support the failure to pay overtime, the similarity of routes, similarity of the drivers, or other facts." *Id.*

Here, Plaintiffs contend that "all the individuals in this case are similarly situated in that they were subject to the same policies for computing the regular-rate-of-pay." (Doc. 25 at 15) Specifically, Plaintiffs assert "all overtime was paid at 1.5 times the regular hourly rate of pay, and no computation

was made for additional payments." (*Id.*)  Significantly, however, Plaintiffs fail to identify *any* evidence to support these assertions, or that they were entitled to additional payments.  In their declarations, Plaintiffs fail to address overtime pay, or provide any information indicating other drivers were not provided the proper overtime under the FLSA.  (*See generally* Doc. 25-1; Doc. 25-2)  Neither Mr. Gifford nor Mr. Moellman discussed the jobs performed by other drivers, the hours worked, or the pay received.  Rather, their declarations are limited to the jobs the jobs each performed.  The only mention of other employees is plaintiffs' estimation that the company employed "50-80 other individuals working as Drivers" during the course of their employment.  (*See id.*)  Because the plaintiffs fail to address the similarity of tasks undertaken by drivers or whether they observed other drivers working overtime without compensation, the evidence is insufficient to support a conclusion that other drivers are similarly situated to the named plaintiffs at this time.  *See Bishop*, 582 F.Supp.3d at 1296; *Edwards*, 467 F. Supp. 2d at 990.  Thus, the Court declines to certify this matter as a collective action under the FLSA.

## VI.     CONCLUSION AND ORDER

As set forth above, Plaintiffs fail to demonstrate class certification is appropriate for the proposed class and subclass.  First, Plaintiff failed to establish the numerosity requirement was satisfied for either class.  Even if the Court assumed the classes were sufficiently numerous, Plaintiffs fail to present evidence demonstrating commonality or typicality of the claims.  Therefore, the Court declines to discuss whether these classes satisfy Rule 23(b).  *See Amchem Prods.*, 521 U.S. at 614 (explaining a court only reaches the requirements of Rule 23(b) when a party seeking class certification demonstrates the proposed classes satisfy the prerequisites of Rule 23(a)).  Further, Plaintiffs fail to produce any evidence that they are similarly situated to other employees.

Based upon the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs' motion for class certification and certification as a collective action is **DENIED**.

IT IS SO ORDERED.

Dated:   **March 11, 2016**                    **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE

17